**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724**<br><br>**HON. CYNTHIA M. RUFE** |
| **IN RE: DOXYCYCLINE CASES** | |
| **THIS DOCUMENT RELATES TO:**<br><br>*ALL DOXYCYCLINE INDIRECT RESELLER ACTIONS* | **16-DX-27243** |

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO DISMISS INDIRECT RESELLER PLAINTIFFS' CLASS ACTION COMPLAINT

---

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 2

    A.    The Parties ................................................................................. 2

    B.    Doxycycline ............................................................................... 2

    C.    Plaintiffs' Claims ...................................................................... 3

ARGUMENT ......................................................................................................... 4

I.    PLAINTIFFS' SHERMAN ACT AND STATE LAW CLAIMS FAIL TO MEET THE *TWOMBLY* PLEADING STANDARD ........................................... 4

    A.    Plaintiffs Do Not Allege Direct Evidence of an Antitrust Conspiracy ................................................................................. 5

    B.    Plaintiffs Do Not Sufficiently Plead Circumstantial Evidence of a Conspiracy ................................................................................. 6

    C.    Plaintiffs Do Not Adequately Plead Parallel Conduct. ............................. 6

    D.    Plaintiffs Do Not Plead Sufficient Facts to Create an Inference of Conspiracy. ................................................................................. 7

    E.    Plaintiffs' State Law Antitrust Claims Must Be Dismissed for Failure to Plead a Plausible Conspiracy ..................................................... 9

II.    PLAINTIFFS LACK ARTICLE III STANDING TO SUE UNDER THE LAWS OF STATES WHERE NO NAMED PLAINTIFF WAS INJURED ...... 10

III.    PLAINTIFFS DO NOT ADEQUATELY PLEAD ANTITRUST STANDING OR PROXIMATE CAUSATION .................................................. 12

    A.    Plaintiffs Have Not Alleged Which Drugs Each Purchased .................... 13

    B.    Plaintiffs Do Not Have Antitrust Standing Under *Associated General Contractors* ................................................................... 14

    C.    Plaintiffs' Consumer Fraud and Unjust Enrichment Claims Fail Because Plaintiffs Have Failed to Plead Proximate Causation ................ 18

IV.    PLAINTIFFS' STATE LAW ANTITRUST CLAIMS FAIL FOR STATE-SPECIFIC REASONS ......................................................................... 20

    A.    Plaintiffs Fail to Allege a Substantial Effect on Intrastate Commerce, As Required to State an Antitrust Claim in Several States ................................................................................. 20

    B.    Certain States Bar Indirect Purchaser Class Actions ............................. 21

    C.    No Plaintiff Is a Citizen of Utah .......................................................... 21

    D.    Plaintiffs Failed to Give Notice to the State Attorney General as Required by Arizona, Nevada, and Utah's Antitrust Statutes ................ 22

i

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

V.      CONSUMER PROTECTION CLAIMS FAIL AS A MATTER OF LAW ........ 23

        A.      Plaintiffs Cannot Use Consumer Protection Laws to Recover for
                Antitrust Claims Barred Under States' Substantive Antitrust Laws ........ 24

        B.      South Carolina's and Georgia's Consumer Protection Statutes Bar
                Class Actions ................................................................. 25

        C.      Consumer Protection Statutes in Arkansas, Georgia, New Mexico,
                and West Virginia Are Inapplicable to Antitrust Conduct ...................... 26

        D.      Plaintiffs Fail to Allege Deceptive Conduct as Required by New
                York Law ....................................................................... 27

        E.      Plaintiffs Fail to Allege Unconscionable or Deceptive Conduct ............. 28

        F.      North Carolina and Wisconsin Law Require Reliance on a
                Misrepresentation ............................................................. 30

        G.      Plaintiffs Fail to Sufficiently Allege In-State Injury ................................. 30

        H.      Plaintiffs' Consumer Fraud Claims Can Only Be Brought as to a
                Limited Class of Plaintiffs or Purchases for Limited Purposes .............. 32

VI.     PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL AS A
        MATTER OF LAW ............................................................... 34

        A.      Plaintiffs Fail to Plead Any Viable Unjust Enrichment Claims .............. 34

        B.      Plaintiffs' Unjust Enrichment Claims Fail for State-Specific
                Reasons ......................................................................... 34

VII.    PLAINTIFFS' STATE LAW CLAIMS ARE TIME-BARRED ........................ 35

CONCLUSION ................................................................................ 38

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

## Table of Authorities

### Federal Cases

*2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, 369 F.3d 732 (3d Cir. 2004) ...............................................................................................................13, 15

*AGC. Loeb Indus., Inc. v. Sumitomo Corp.,* 306 F.3d 469 (7th Cir. 2002) .......................15, 17, 18

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981)...........................................................................12

*Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)..............................................................................15, 17, 18, 19

*BanxCorp v. Bankrate, Inc.*, No. 07-3398 (ES) (CLW), 2011 WL 6934836 (D.N.J. Dec. 30, 2011)........................................................................................................8

*Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178 (3d Cir. 1997) ......................................................................................................13, 15, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................1, 4, 7, 19

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ....................................................5, 8

*CAE Inc. v. Gulfstream Aerospace Corp.*, 203 F. Supp. 3d 447 (D. Del. 2016) ...........................13

*Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104 (1986) .........................................................13

*City of L.A. v. Lyons*, 461 U.S. 95 (1983) ......................................................................................13

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)...................................................................10

*Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223 (3d Cir. 2013)..........................................13

*Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058 (N.D. Cal. 2014).............................................11

*Food Lion, Inc. v. Capital Cities/ABC., Inc.,* 194 F.3d 505 (4th Cir. 1999)..................................34

*Formula One Licensing, B.V. v. Purple Interactive Ltd.*, 2001 U.S. Dist. LEXIS 2968 (N.D. Cal. Feb. 6, 2001)..................................................................................24

*HLD Enters., Inc. v. Michelin N. Am., Inc.*, No. 1:03-CV-2558, 2004 WL 2095739 (N.D. Ga. June 29, 2004) .........................................................................27

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ........................................................................18

*In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 U.S. Dist. LEXIS 32652 (N.D. Ill. Apr. 1, 2010) ........................................................................27

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

*In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224 (D. Conn. 2015) ..............................21, 22, 23

*In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516, 2016 U.S. Dist. LEXIS 104647 (D. Conn. Aug. 9, 2016) ....................................................................................24, 25

*In re Asacol Antitrust Litig.*, No. 15-cv-12730-DJC, 2016 U.S. Dist. LEXIS 94605 (D. Mass. July 20, 2016)..............................................................................................23

*In re Automotive Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544 (E.D. Pa. 2007) ..........................................................................................................................28, 29

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508, 2015 U.S. Dist. LEXIS 121620 (E.D. Tenn. June 24, 2015) ........................................21, 32, 33

*In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010) .......................11

*In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224 (M.D. Pa. 2010) .......................................................................................................................33

*In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383 (3d Cir. 2015) .................................8

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-cv-3690, 2013 U.S. Dist. LEXIS 119962 (N.D. Ill. Aug. 23, 2013).........................................................11, 19

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-cv-3690, 2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015) ..................................16, 19, 25, 29

*In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435 (S.D.N.Y. 2008) ...................5, 9, 12, 28

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007)..................................11

*In re Ductile Iron Pipe Fittings (DIPE) Indirect Purchaser Antitrust Litig.*, No. 12-169, 2013 U.S. Dist. LEXIS 142466 (D.N.J. Oct. 2, 2013) ................................11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007)...............................................................................16, 25, 27, 34

*In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291 (S.D. Fla. 2010) ..........................................................................................................................19

*In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524 (E.D. Pa. 2010) ......................................11, 21

*In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26 (D.D.C. 2008) ..................................................11

*In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085 (N.D. Cal. 2007) ..........................................................................................................................26

*In re Graphics Processing Units Antitrust Litig. (GPU I)*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007).......................................................................................................... passim

iv

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2014 WL 4955377 (N.D. Cal. Oct.2, 2014) ................................................................32

*In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. Aug. 27, 2004) ................................37

*In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724 (D.N.J. 2016)................................................................28

*In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155 (N.D. Cal. 2015) ......................................24

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir. 1993) ..........................17

*In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-0620, 2008 U.S. Dist. LEXIS 16595 (E.D. Pa. Mar. 3, 2008) ................................................................9

*In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015).....................7

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004)................................................................25, 30, 31

*In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367 (D. Mass. 2013) ................................................................22

*In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735 (E.D. Pa. 2014)................................10, 11, 22

*In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704 (N.D. Ill. 2015) ..................................22, 35

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011).........................28, 30

*In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2017 U.S. Dist. LEXIS 37804 (S.D. Cal. Mar. 14, 2017) ......................................................38

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009).........................................11, 30

*In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2012 U.S. Dist. LEXIS 98827 (E.D. Mich. July 17, 2012) ................................................11, 18

*In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ...........................................................16, 29, 33

*In re Static Random Access Memory Antitrust Litig. (SRAM) Antitrust Litigation*, No. 07–md–0819 CW, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ....................................26

*In re Skelaxin (Metaxalone) Antitrust Litigation*, 299 F.R.D. 555 (E.D. Tenn. 2014) ................................................................18

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665 (E.D. Pa. 2014) ................................................................11

v

*In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014)..................................................................................................26

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593 (D.S.C. 2015) ......................................................................................................26

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001) .........................................................................................................11

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009)..............................10, 11, 33

*In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670 (E.D. Pa. 2010) ..................................21

*In re Wellpoint, Inc., Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880 (C.D. Cal. 2012)..................................................................................................19

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2664, 2014 U.S. Dist. LEXIS 31188 (D. Minn. Mar. 11, 2014) ....................................................11

*Jones v. ConAgra Foods, Inc.*, No. C 12-01633, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014) ..................................................................................31

*Klein v. Gen. Nutrition Cos.*, 186 F.3d 338 (3d Cir. 1999)....................................................10, 14

*Lewis v. Casey*, 518 U.S. 343 (1996)................................................................................................10

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ............................................................................6

*Mid-West Paper Prods. Co. v. Continental Grp.*, 596 F.2d 573 (3d Cir. 1979)............................13

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984)........................................................5

*Norman's on the Waterfront, Inc. v. Wheatley*, 317 F. Supp. 247 (D.V.I. 1970), *aff'd*, 444 F.2d 1011 (3d Cir. 1971) ..............................................................4

*O'Shea v. Littleton,* 414 U.S. 4886 (1974) .....................................................................................13

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc.*, 998 F.2d 1224 (3d Cir. 1993)..................................................................................................9

*Plumber's Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 WL 4235773 (E.D. Pa. Sept. 25, 2017) ...........................................................12

*Regence Blueshield v. Philip Morris, Inc.*, 40 F. Supp. 2d 1179 (W.D. Wash. 1999) ...............................................................................................................19

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205 (E.D. Pa. 2009).......................................................................32

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

*SigmaPharm, Inc. v. Mut. Pharm. Co.*, 772 F. Supp. 2d 660 (E.D. Pa. 2011)
(Rufe, J.), *aff'd*, 454 F. App'x 64 (3d Cir. 2011)...............................................13, 14

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976).............................................11

*Soo Line R.R. v. Overton*, 992 F.2d 640 (7th Cir. 1993)................................................12

*Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659 (W.D. Wis. 2009).........................30

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d
912 (3d Cir. 1999).......................................................................................20

*Sunoptic Techs., LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-979-J-16JRK, 2009
U.S. Dist. LEXIS 23836 (M.D. Fla. Mar. 17, 2009)....................................................29

*Superior Offshore Int'l v. Bristow Grp., Inc.*, 490 F. App'x 492 (3d Cir. 2012).........................7, 9

*Supreme Auto Transp. LLC v. Mittal*, No. 08-cv-5468, 2017 U.S. Dist. LEXIS
30762 (N.D. Ill. Mar. 3, 2017)...............................................................15, 19, 20

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C.
1987)......................................................................................................32

*Thompson v. Bank of Am.,* No. 7:09-CV-8we9- H, 2011 U.S. Dist. LEXIS 109660
(E.D.N.C. Feb. 24, 2011)..............................................................................19

*United States v. Merck & Co.,* No. CV-10-4374, 2014 WL 12603143 (E.D. Pa.
Sept. 4, 2014).........................................................................................11

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, No. 16-1345, 2017 WL
4364317 (3d Cir. Sept. 14, 2017)..................................................................7, 8, 9

*Vista Health Plan v. Cephalon, Inc.*, No. 2:06-cv-1833, 2015 U.S. Dist. LEXIS
74846 (E.D. Pa. June 10, 2015)......................................................................18

*Warth v. Seldin*, 422 U.S. 490 (1975)....................................................................11

*WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093-
JDW-MSS, 2008 U.S. Dist. LEXIS 61428 (M.D. Fla. Aug. 4, 2008)....................................29

## STATE CASES

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200
(2004)....................................................................................................28

*Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220 (N.C. 2013)....................................30

*Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200 (Del. Ch. 1988).........................31

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

*Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314 (2002) ...................................................................32

*Mack v. Bristol-Myers Squibb Co.,* 673 So. 2d 100 (Fla. Dist. Ct. App. 1996)............................25

*New York v. Daicel Chem. Indus., Ltd.*, No. 0403878, 2005 N.Y. Misc. LEXIS 8435 (N.Y. Sup. Ct. Aug. 9, 2005) ..............................................................................19

*Paltre v. Gen. Motors Corp.*, 26 A.D.3d 481 (N.Y. App. Div. 2006) ..........................................28

*Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192 (Iowa 2007) ......................................................20

*State v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301 (N.Y. App. Div. 2007) ..................................28

*Zine v. Chrysler Corp.*, 236 Mich. App. 261 (Mich. App. 1999) ................................................33

## OTHER AUTHORITIES

Alaska Stat. Ann. § 45.50.577(i)...................................................................................................24

Arizona Antitrust Act, Ariz. Rev. Stat. § 44-1415(A) .................................................................22

Clayton Act § 16, 15 U.S.C. § 26 (1976) ....................................................................................15

Delaware Consumer Fraud Act, Del. Code Ann. Title 6, § 2512 ................................................31

Federal Rule of Civil Procedure 8 ................................................................................................23

Federal Rule of Civil Procedure Rule 9(b) .......................................................................29, 30, 38

Georgia Uniform Deceptive Trade Practices Act, Ga. Code § 10-1-373(a) .................................27

Illinois Antitrust Act, Ill. Comp. Stat. § 10/7(2) ....................................................................18, 21

Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903............................................33

Minn. Stat. § 325D.57...................................................................................................................18

N.M. Stat. § 57-1-3(C)..................................................................................................................18

N.Y. Gen. Bus. Law § 340(6) .......................................................................................................18

Nevada Unfair Trade Practice Act, Nev. Rev. Stat. Ann. § 598A.210(3) .....................................22

New Mexico Unfair Practice Act, N.M. Stat. Ann. § 57-12-2(D).................................................27

New York's General Business Law § 349.............................................................................19, 27, 28

Or. Rev. Stat. § 646.775(1)(b)(A)..................................................................................................18

S.C. Code Ann. § 39-5-140(a) ......................................................................................................26

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

S.D. Codified Laws § 37-1-33 ................................................................................18

Sherman Antitrust Act, 15 U.S.C. §§ 1–7............................................................. passim

U.S. Const. art. III ...............................................................................1, 10, 11, 12

Utah Antitrust Act, Utah Code § 76-10-3109(9) ..........................................................23

Vt. Stat. Title 9, § 2465(b) ...............................................................................18

West Virginia Consumer Credit Proection Act, W. Va. Code § 46A-6-102(2) .....................27, 34

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

## INTRODUCTION

Six independent retail pharmacies purporting to represent an indirect reseller plaintiff class of independent pharmacies (collectively, "Plaintiffs" or "IRPs") filed a complaint alleging that Defendants—who manufacture and sell different formulations of Doxycycline—entered two conspiracies involving two Doxycycline products.  The IRPs' Complaint, brought many months after Direct Purchaser Plaintiffs ("DPPs") and End-Payer Plaintiffs ("EPPs") filed their initial cases concerning Doxycycline, mimics the DPPs' and EPPs' pleadings.  For the same reasons that the DPP and EPP Complaints are flawed, which are explained in the memoranda of law in support of those motions to dismiss, Plaintiffs here do not plead a valid claim under the Sherman Act, or state antitrust, consumer protection, or unjust enrichment law.  Defendants expressly incorporate herein the memoranda supporting the motions to dismiss the DPPs' and EPPs' Complaints (respectively, "DPP Memorandum," cited as "DPP Mem." and "EPP Memorandum," cited as "EPP Mem.").

As an initial matter, Plaintiffs' Complaint must be dismissed in its entirety because it does not meet the pleading standards in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and its progeny.  *See infra* Part I.

Second, putting aside *Twombly*, Plaintiffs' Complaint suffers from additional deficiencies that require dismissal of all claims as a matter of law.  First, under Article III of the U.S. Constitution, Plaintiffs lack standing to assert the majority of their claims.  In those states where no Plaintiff resides or is alleged to have purchased either Doxycycline formulation, Plaintiffs do not have standing to bring a claim themselves or on behalf of a class, and those claims must be dismissed.  *See infra* Part II.

Third, Plaintiffs lack antitrust standing because of their intermediate position in the prescription drug sales chain.  They cannot bring federal and state antitrust claims (or consumer

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

protection or unjust enrichment claims) because their alleged injuries are both remote and speculative, and more efficient plaintiffs are available to pursue those claims. *See infra* Part III.

Fourth, many of Plaintiffs' claims fail because they do not state a claim under state law. In some instances, Plaintiffs assert claims in states that do not permit indirect purchaser lawsuits. In other instances, Plaintiffs fail to allege the elements required under the states' antitrust or consumer protection statutes. *See infra* Parts IV and V.

Fifth, unable to manufacture a viable claim for monetary recovery, Plaintiffs assert claims for unjust enrichment. But these claims fare no better because Plaintiffs fail to sufficiently plead what state law underpins their claims. *See infra* Part VI.

Finally, Plaintiffs failed to timely file many of their state law claims and have no legally cognizable excuse for their delay. *See infra* Part VII.

## FACTUAL BACKGROUND

### A.    The Parties

Defendants Actavis Holdco U.S., Inc. ("Actavis"); Heritage Pharmaceuticals, Inc. ("Heritage"); Mayne Pharma Inc. ("Mayne"); Mylan Inc. and Mylan Pharmaceuticals, Inc. (together, "Mylan"); Par Pharmaceutical, Inc. ("Par"); Sun Pharmaceutical Industries, Inc. ("Sun"); and West-Ward Pharmaceuticals Corp. ("West-Ward") (collectively, "Defendants") are the same pharmaceutical manufacturers named in the DPPs' and EPPs' Complaints. Compl. ¶¶ 30–37. Plaintiffs are six independent pharmacies who claim to have indirectly purchased (and then re-sold) generic Doxycycline products during the alleged class period. *Id.* ¶¶ 24–29.

### B.    Doxycycline

Doxycycline is a tetracycline antibiotic used to treat a variety of bacterial infections. *Id.* ¶ 5. The Doxycycline of the Complaint is, in fact, two separate products: distinct capsule and tablet forms in both regular release ("Doxy RR") and delayed release ("Doxy DR") formulations.

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

*Id.*  As alleged in the Complaint, Defendants Actavis, Heritage, Mayne, Mylan, Par, Sun, and West-Ward sold generic Doxycycline products during the class period.  *Id.* ¶¶ 30–37.  Plaintiffs do not specify whether they purchased Doxy RR or Doxy DR or both forms of Doxycycline.

### C.    Plaintiffs' Claims

Plaintiffs purport to represent two classes: (i) a nationwide injunctive relief class of independent pharmacies that "indirectly purchased Defendants' generic Doxycycline Hyclate products (including regular release capsules (50 or 100mg) or tablets (100 mg) or delayed release tablets (75, 100, and 150mg)) at any time during the period from November 1, 2012 through the present," *id.* ¶ 248; and (ii) a damages class of independent pharmacies that "indirectly purchased Defendants' generic Doxycycline Hyclate regular release capsules or tablets at any time from November 1, 2012 through the present" and that "indirectly purchased Defendants' generic Doxycycline Hyclate delayed release tablets at any time from April 1, 2013, through the present," *id.* ¶ 249.  Plaintiffs allege that the prices charged by Sun, Actavis, and West-Ward for Doxy RR "increased sharply beginning in November 2012."  *Id.* ¶¶ 77, 80–91.  Plaintiffs do not allege price hikes by any of the other Defendants; indeed, the pricing data cited by Plaintiffs shows that ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████  *Id.* ¶¶ 77–78.  As to Doxy DR, Plaintiffs do not provide any pricing information whatsoever in support of their allegations that Doxy DR prices were "set or maintained above competitive levels" by Defendants Mayne, Heritage, and Mylan.  *Id.* ¶¶ 7, 100–10.

Plaintiffs claim that all Defendants "entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially allocate customers, rig bids and raise, maintain and fix prices for generic Doxycycline, thereby creating anticompetitive effects."  *Id.* ¶ 270.  Plaintiffs' basic factual allegations are the same as those alleged by the DPPs and EPPs.

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Plaintiffs assert violations of: Sections 1 and 3 of the Sherman Act (Count I);[1] state antitrust statutes (Count II); state consumer protection statutes (Count III); and unspecified "equity precedents" concerning "Unjust Enrichment" (Count IV).  *Id*. ¶¶ 268–356.

## ARGUMENT

The factual underpinning for Plaintiffs' Sherman Act claim and each of the state law claims is the same:  two alleged conspiracies affecting Doxy RR and Doxy DR.  For the same reasons set forth in Defendants' motions to dismiss the DPPs' and EPPs' Complaints, IRPs have failed to allege a conspiracy that violates the Sherman Act, and all claims therefore should be dismissed.  Moreover, their state law antitrust, consumer protection, and unjust enrichment claims fail for the additional reasons described below.  A summary of these independent bases for dismissal is provided in Appendix A.

## I.    PLAINTIFFS' SHERMAN ACT AND STATE LAW CLAIMS FAIL TO MEET THE *TWOMBLY* PLEADING STANDARD

For their First Count, Plaintiffs assert a claim under the Sherman Act seeking solely injunctive relief.  To state a viable Section 1 claim, a plaintiff must allege facts supporting a plausible inference that defendants conspired to unreasonably restrain trade.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).  To plead the existence of such an unlawful agreement, a plaintiff must allege either (1) direct evidence of an unlawful agreement, or (2) parallel conduct and "circumstantial evidence that reasonably tends to prove that the [defendants] had a conscious commitment to a common scheme."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).  The Plaintiffs here do neither.  For the same reasons that DPPs and

---

[1] Section 3 extends Section 1's antitrust prohibition to U.S. territories and the District of Columbia but does not otherwise impact the antitrust analysis in this memorandum.  *See Norman's on the Waterfront, Inc. v. Wheatley*, 317 F. Supp. 247, 250 (D.V.I. 1970), *aff'd*, 444 F.2d 1011 (3d Cir. 1971).  For this reason, Defendants herein refer to all of Plaintiffs' Sherman Act claims as Section 1 claims.

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

EPPs have failed to plead a plausible conspiracy, so too have Plaintiffs failed to adequately plead direct or circumstantial evidence of a conspiracy concerning either Doxy RR or Doxy DR.  *See* DPP Mem. Parts I.A., II.A.; EPP Mem. pp. 5–10.

Because their antitrust claims fail to meet the *Twombly/Iqbal* standard, IRPs' state law claims also fail as a matter of law.  *See In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435, 451 (S.D.N.Y. 2008) (dismissing state antitrust and consumer protection claims where underlying federal antitrust claims failed to meet *Twombly* pleading standards).  Plaintiffs' state law consumer protection claims are premised upon the same underlying facts, recast as unfair, unconscionable, or deceptive conduct.  Those claims must also be dismissed.  *See id.* at 451 & n.25 (citing cases).

**A.      Plaintiffs Do Not Allege Direct Evidence of an Antitrust Conspiracy**

Direct evidence of a conspiracy must be explicit and require no inference to establish the proposition or conclusion asserted.  *See Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011).  IRPs' Complaint relies on the same basic allegations of conspiracy as the DPPs' Consolidated Amended Class Action Complaint:  (1) increases in the "average effective prices" or "list" prices for Doxy RR; (2) market characteristics; (3) participation in trade association events; (4) statements made during public earnings calls; and (5) the existence of government investigations.  With respect to Doxy DR, EPPs virtually copy DPPs' allegations regarding purported allocation of customers and bid-rigging.  Compl. ¶¶ 119–25.  Defendants incorporate by reference the arguments for dismissal contained in the memorandum of law in support of their motion to dismiss the DPPs' Complaint ("DPP Memorandum").  As described in detail in that motion, none of these allegations constitute direct evidence of an antitrust conspiracy as to either Doxy RR or Doxy DR.  *See* DPP Mem. Parts I.A., II.A.

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

### B.  Plaintiffs Do Not Sufficiently Plead Circumstantial Evidence of a Conspiracy

Plaintiffs also fail to allege facts from which the Court could reasonably infer an antitrust conspiracy based on circumstantial evidence.  In particular, Plaintiffs fail to allege facts demonstrating parallel conduct, and they do not allege facts constituting the "plus factors" necessary to sustain an antitrust conspiracy claim based on circumstantial evidence.  *See Lum v. Bank of Am.*, 361 F.3d 217, 230 (3d Cir. 2004) (a complaint alleging an antitrust conspiracy based on circumstantial evidence must allege parallel conduct and "plus factors" that reveal "circumstances under which . . . the inference of rational independent choice [is] less attractive than that of concerted action").

### C.  Plaintiffs Do Not Adequately Plead Parallel Conduct.

Plaintiffs attempt to plead parallel conduct regarding Doxy RR through pricing data, which they claim demonstrates collusion.  Compl. ¶¶ 71–99.  However, the data cited does not demonstrate that Defendants charged the same prices for Doxy RR.  *Id.* ¶¶ 77–78.  To the contrary, the data on which Plaintiffs rely is either irrelevant because it shows list (or "wholesale acquisition cost," referred to as "WAC") prices rather than actual, transaction prices, or is inadequate because it reflects variations in pricing by the different defendants.  *See* DPP Mem. pp. 11–14; EPP Mem. pp. 6–7.  The "average effective pricing" data on which Plaintiffs focus hardly shows that Defendants raised prices in a parallel fashion— ███████████████

████████████████████████████████████████

█████████  *Id.* ¶¶ 77–78.  Accordingly, Plaintiffs have failed to allege parallel conduct with respect to Doxy RR.  *See* DPP Mem. pp. 11–14.

Plaintiffs cite no individual pricing data for any manufacturer of Doxy DR, and therefore fail to plead parallel conduct, as described in the DPP Memorandum.  DPP Mem. pp. 28–29.

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

**D.**   **Plaintiffs Do Not Plead Sufficient Facts to Create an Inference of Conspiracy.**

Even if Plaintiffs had successfully alleged parallel pricing conduct, their claims would still fail as a matter of law because there are no allegations plausibly suggesting that Defendants' purported conduct was the product of collusion.  Without sufficient allegations of plus factors, mere parallel conduct "stops short of the line between possibility and plausibility."  *Twombly*, 550 U.S. at 557; *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015) (citing *Twombly* and holding plaintiff must allege factual allegations that are "largely inconsistent with unilateral conduct [and] largely consistent with explicitly coordinated action").

The Third Circuit has identified specific types of facts that, if sufficiently pleaded, *may* "rule out" independent self-interest as an explanation for parallel conduct:  (1) evidence that the defendant had a motive to conspire; (2) evidence that the defendant acted against self-interest; and (3) "traditional" conspiracy evidence.  *See Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, No. 16-1345, 2017 WL 4364317, at *4 (3d Cir. Sept. 14, 2017).

The Third Circuit has instructed, however, that the first two factors, motive and actions contrary to self-interest, "are not especially helpful in price-fixing cases where, as here, there are [alleged] parallel price increases by competitors in a concentrated market."  *Superior Offshore Int'l v. Bristow Grp., Inc.*, 490 F. App'x 492, 499 (3d Cir. 2012).  This is because "the first two factors largely restate the phenomenon of interdependence."  *Valspar*, 2017 WL 4364317, at *7; *see also In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 398 (3d Cir. 2015) (same).[2]

---

[2] Many of Plaintiffs' allegations purport to describe a conspiracy to fix prices for "Doxycycline" generically, ignoring the distinction between Doxy RR and Doxy DR.  *See, e.g.*, Compl. ¶ 16.  However, Plaintiffs also make some allegations of market allocation and other anticompetitive conduct, which are specifically related to Doxy DR (and not Doxy RR).  *See id.* ¶¶ 103–10.  The legal analysis for market allocation, and other per se unlawful

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

As explained in the DDP Memorandum, there are no allegations of motive to conspire or conduct against self-interest.  At most, Plaintiffs, like DPPs, allege conscious parallelism or follow-the-leader pricing that is common in oligopolistic markets and that the Third Circuit has held does not establish a plus factor indicative of conspiracy.  *See* DPP Mem. pp. 15, 29–30.

Finally, for the same reasons set forth in DDP Memorandum, Plaintiffs have failed to allege facts amounting to a traditional conspiracy.  First, Plaintiffs allege certain market characteristics that they claim make the industry "susceptible to collusion."  Compl. ¶¶ 212–14. But as explained in the DPP Memorandum, the law is clear that such allegations of conscious parallelism in a purportedly highly-concentrated market do not create a plausible inference of an unlawful agreement.  *Valspar*, 2017 WL 4364317, at *7 (noting that the Supreme Court has explained that "conscious parallelism" does not violate antitrust laws); *see also Burch*, 662 F.3d at 229 ("Appellees' motivation of market behavior are precisely the legally insufficient facts we have cautioned against using as circumstantial evidence of an agreement."); *see also* DPP Mem. pp. 15, 29–30.

Next, Plaintiffs claim, without support, that Defendants must have colluded because they attended the same trade association meetings and conferences.  Compl. ¶ 114.  But "[p]roof of opportunity to conspire, without more, will not sustain an inference that a conspiracy has taken place."  *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc.*, 998 F.2d 1224, 1235 (3d Cir. 1993); *see also Valspar*, 2017 WL 4364317, at *9.  Courts have universally recognized that membership and participation in trade associations, as is alleged here, do not give rise to a plausible inference of conspiracy.  *Id.* at 1235; *see also* DPP Mem. pp. 19–21, 31–32.

---

anticompetitive activities, is the same as that for price fixing, and this Memorandum will generally refer to the allegations as claims of price fixing.  *See, e.g., BanxCorp v. Bankrate, Inc.*, No. 07-3398 (ES) (CLW), 2011 WL 6934836, at *7–8 (D.N.J. Dec. 30, 2011) (applying analysis to predatory pricing conspiracy).

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

In addition, Plaintiffs allege that statements made in public earnings calls are evidence of collusion. *See* Compl. ¶¶ 154–79. Nothing in their allegations, however, provides any factual basis for this inference. *See* DPP Mem. pp. 21–24, 32–33.

Finally, Plaintiffs rely heavily on government investigations regarding generic drug pricing and criminal plea agreements involving two former Heritage executives. *See* Compl. ¶¶ 11–15. But this Court and others have dismissed complaints containing similar types of allegations, properly holding that the mere existence of a government investigation says nothing about whether the defendants were actually conspiring. *See*, *e.g.*, *Superior Offshore*, 738 F. Supp. 2d at 516; *see also* DPP Mem. pp. 16–19, 30–31.

### E.   Plaintiffs' State Law Antitrust Claims Must Be Dismissed for Failure to Plead a Plausible Conspiracy

Plaintiffs' state antitrust and consumer protection claims also must be dismissed for the same reason as their Sherman Act claim: there are no well-pleaded allegations plausibly suggesting that Defendants conspired as to either Doxy RR or Doxy DR. State claims brought in federal court must meet federal pleading standards set forth in *Twombly* and *Iqbal*. *See In re Graphics Processing Units Antitrust Litig. (GPU I)*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007); *see also In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-0620, 2008 U.S. Dist. LEXIS 16595 (E.D. Pa. Mar. 3, 2008). Because Plaintiffs' antitrust and consumer protection claims fail to meet the *Twombly/Iqbal* standard, Plaintiffs' state law claims also fail as a matter of law. *See In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435 (S.D.N.Y. 2008) (dismissing state antitrust and consumer protection claims where underlying federal antitrust claims failed to meet *Twombly* pleading standards).

Moreover, every state law under which Plaintiffs purport to bring an antitrust claim provides, either by statute or case law, that decisions of federal courts on Sherman Act claims are

9

either determinative or highly persuasive with respect to their state analogues.  *See* App'x B.

Unsurprisingly, courts therefore regularly dismiss state law antitrust claims when dismissing

Sherman Act claims based on the same allegations.  This Court should do the same.

## II.   PLAINTIFFS LACK ARTICLE III STANDING TO SUE UNDER THE LAWS OF STATES WHERE NO NAMED PLAINTIFF WAS INJURED

In Counts II and III, Plaintiffs assert claims under antitrust and consumer protection laws

of 35 states and U.S. territories.  *See* Compl. ¶¶ 285–312, 316–38.  Except for claims brought

under the laws of the states where Plaintiffs are alleged to reside, these claims must be dismissed

for lack of Article III standing.

Under Article III of the U.S. Constitution, Plaintiffs can bring state law claims in federal

court *only* if a named plaintiff resided or purchased the generic drug in the state whose laws they

seek to invoke.  *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 151 (E.D. Pa.

2009).  Article III's case or controversy requirement demands that the plaintiff "demonstrate

standing for *each* claim he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352

(2006) (emphasis added).  "It is not sufficient that the 'injury has been suffered by other,

unidentified members of the class to which they belong and which they purport to represent.'"

*In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) (quoting *Klein v. Gen.

Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (quoting *Lewis v. Casey*, 518 U.S. 343, 357

(1996)).  It is Plaintiffs' burden to allege facts sufficient to demonstrate standing to bring each

discrete claim they assert.

That Plaintiffs seek to represent a class does not alter this burden:  "named plaintiffs who

represent a class 'must allege and show that they personally have been injured, not that injury

has been suffered by other, unidentified members of the class to which they belong and which

they purport to represent.'"  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

(quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).  Courts in this district have consistently

dismissed indirect purchaser claims brought under the laws of states in which no named plaintiff

resided or was injured.  *See Wellbutrin*, 260 F.R.D. at 156–58 (dismissing claims under the laws

of states where no named plaintiff suffered an injury); *Niaspan*, 42 F. Supp. 3d at 758–59

(same); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp.

3d 665, 692–94 (E.D. Pa. 2014) (same).  Other district courts have done the same.[3]

Article III standing is a threshold issue which must be addressed on the pleadings, as

courts in the Eastern District of Pennsylvania have consistently held.[4]  These courts found no

justification for deferring resolution of this question until class certification.  *See, e.g.*, *In re

Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (failing to analyze putative

class representative's standing on motion to dismiss improperly "would allow named plaintiffs in

a proposed class action, with no injuries in relation to the laws of certain states referenced in

their complaint, to embark on lengthy class discovery with respect to injuries in potentially every

state in the Union"); *accord*, *Plumber's Local Union No. 690 Health Plan v. Apotex Corp.*, No.

16-665, 2017 WL 4235773, at *12–13 (E.D. Pa. Sept. 25, 2017).

Further, allowing Plaintiffs' claims to proceed under the laws of states where no named

plaintiff is alleged to reside or to have made purchases would violate due process.  "For the

---

[3] *Accord, e.g.*, *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1082-83 (N.D. Cal. 2014); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2664, 2014 U.S. Dist. LEXIS 31188, at *30–36 (D. Minn. Mar. 11, 2014); *In re Ductile Iron Pipe Fittings (DIPE) Indirect Purchaser Antitrust Litig.*, No. 12-169, 2013 U.S. Dist. LEXIS 142466, at *32–33 (D.N.J. Oct. 2, 2013); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-cv-3690, 2013 U.S. Dist. LEXIS 119962, at *26–27 (N.D. Ill. Aug. 23, 2013); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2012 U.S. Dist. LEXIS 98827, at *30–34 (E.D. Mich. July 17, 2012); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324–25 (S.D. Fla. 2010); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 35–36 (D.D.C. 2008); *GPU I*, 527 F. Supp. 2d at 1026-27; *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106–07 (N.D. Cal. 2007); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370–72 (S.D. Fla. 2001).

[4] *See In re Suboxone*, 64 F. Supp. 3d at 694 (Article III analysis should not be deferred); *United States v. Merck & Co.,* No. CV-10-4374, 2014 WL 12603143, at *12–13 (E.D. Pa. Sept. 4, 2014) (same); *Niaspan*, 42 F. Supp. 3d at 758–59; *Flonase,* 610 F. Supp. 2d at 419.

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

application of a state's substantive law to be constitutionally permissible, sufficient contacts with that state must exist to ensure the choice of law is 'neither arbitrary nor fundamentally unfair.'" *Soo Line R.R. v. Overton*, 992 F.2d 640, 644 (7th Cir. 1993) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981)).  For this Court to apply the state laws under which Plaintiffs here purport to bring their claims, Plaintiffs "must be able to allege that the occurrence or transaction giving rise to the litigation – which is [plaintiff's] purchase of allegedly price-fixed goods – occurred in the various states."  *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 11-cv-0058, 2011 U.S. Dist. LEXIS 96741, at *11 (N.D. Cal. Aug. 29, 2011) (internal quotation marks omitted) (dismissing on due process grounds plaintiff's claims brought under the laws of states where it alleged it received goods but were not where plaintiffs resided or purchased goods).

Here, Plaintiffs purport to bring antitrust and consumer protection claims under the laws of 35 states and territories.[5]  Plaintiffs do not claim to have purchased Doxy RR or Doxy DR in any jurisdiction other than the six states in which they are residents—California, Florida, Mississippi, New York, Tennessee, and Wisconsin.  All of Plaintiffs' state law claims, except those arising under those six states' laws, must therefore be dismissed.[6]

## III.     PLAINTIFFS DO NOT ADEQUATELY PLEAD ANTITRUST STANDING OR PROXIMATE CAUSATION

To sustain their federal and state antitrust claims, Plaintiffs must establish that they (1) suffered an antitrust injury, and (2) possess antitrust standing.  *See Barton & Pittinos, Inc. v.*

---

[5] Plaintiffs also allege unjust enrichment claims under the unspecified "equity precedents" of 44 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.  Compl. ¶ 340 & n.101.  Plaintiffs do not have Article III standing to bring unjust enrichment claims under the laws of *any* of these states or territories other than California, Florida, Mississippi, New York, Tennessee, and Wisconsin.  *See* App'x A.

[6] The Sherman Act claim also fails for lack of Article III standing, since the Complaint fails to adequately allege a continuing violation or threatened injury that could support Plaintiffs' injunctive claim.  The "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects" missing here.  *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

*SmithKline Beecham Corp.*, 118 F.3d 178, 182 (3d Cir. 1997).  While the terms "antitrust injury" and "antitrust standing" have at times been used interchangeably, they are two distinct and necessary elements of any private antitrust claim.  *See 2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, 369 F.3d 732, 739 (3d Cir. 2004); *see also Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 110 n.5 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing . . . because a party may have suffered antitrust injury but may not be a proper plaintiff . . . for other reasons.").  Plaintiffs lack antitrust standing because their alleged injuries are remote and, for state law claims, will require a complex apportionment of damages.  Similarly, Plaintiffs' consumer protection and unjust enrichment claims fail because they do not allege facts supporting proximate causation.

A.      **Plaintiffs Have Not Alleged Which Drugs Each Purchased**

Plaintiffs have failed to plausibly allege antitrust standing as to each Defendant by failing to plead which Plaintiff purchased Doxy DR and which purchased Doxy RR.  Antitrust standing requires antitrust injury, which generally is "limited to" pertinent "consumers and competitors." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 232 (3d Cir. 2013).  A plaintiff must therefore show "causation between the defendants' price fixing and the prices paid by [the plaintiff]."  *Mid-West Paper Prods. Co. v. Continental Grp.*, 596 F.2d 573, 583 (3d Cir. 1979).[7] Here, Plaintiffs lack antitrust standing because they have not alleged which Plaintiff purchased which product, and thus have not sufficiently alleged that any Defendant caused their alleged injuries.  *See* Compl. ¶¶ 24–29.

---

[7] *See, e.g.*, *SigmaPharm, Inc. v. Mut. Pharm. Co.*, 772 F. Supp. 2d 660, 673–74, 676 (E.D. Pa. 2011) (Rufe, J.), *aff'd*, 454 F. App'x 64, 68–70 (3d Cir. 2011) (affirming because plaintiff had "not adequately pled antitrust injury"); *CAE Inc. v. Gulfstream Aerospace Corp.*, 203 F. Supp. 3d 447, 456 (D. Del. 2016).

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Plaintiffs have instead attempted to evade the distinction between the products by "refer[ring]" to Doxy RR and Doxy DR "together . . . as 'Doxycycline.'"  *See* Compl. ¶ 1 n.1. Standing defects, however, cannot be avoided by a definitional sleight-of-hand.  The Complaint alleges non-overlapping conspiracies for Doxy RR and Doxy DR and that *different* defendants manufactured the drugs and made *different* alleged anticompetitive agreements.  *Compare id.* ¶¶ 71–102 (describing alleged conduct as to Doxy RR), *with id.* ¶¶ 103–12 (describing different alleged conduct as to Doxy DR).  Because it does not include any allegations specifying which individual plaintiff(s) purchased which product, the Complaint fails to establish any Defendant as the source of any injury.  For example, if no named Plaintiff purchased Doxy RR and each purchased Doxy DR, then the Plaintiffs' alleged injuries could not have been caused by manufacturers of Doxy RR (and vice versa).  The named Plaintiffs cannot avoid this problem by purporting to show standing via alleged purchases by unnamed members of the putative class. *See Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (noting that named plaintiffs must show that they "personally have been injured").  Moreover, Doxy RR and Doxy DR are the respective bioequivalents of different branded drugs containing doxycycline hyclate (Vibramycin and Doryx, respectively), further confirming that each Plaintiff must allege which drug it purchased.  Where, as here, two generic drugs have different branded counterparts and are manufactured by different companies, purchases of one drug cannot give rise to antitrust injury from alleged anticompetitive conduct concerning another drug.  *Cf. SigmaPharm*, 454 F. App'x at 69; *see also* DPP Mem. Part III.

**B.**    **Plaintiffs Do Not Have Antitrust Standing Under** *Associated General Contractors*

Plaintiffs must demonstrate that they are the "proper part[ies] to bring a private antitrust action."  *Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"),

14

459 U.S. 519, 535 n.31 (1983); *see also Barton & Pittinos*, 118 F.3d at 182 ("Even a plaintiff

who can show antitrust injury may lack antitrust standing, because the remaining *AGC* factors

may weigh against allowing him or her to sue under the antitrust laws.").  Grounded in common-

law principles of proximate causation, *AGC* identified several considerations to guide courts in

determining whether plaintiffs alleging remote injuries can maintain their causes of action.

*AGC*, 459 U.S. at 536–45.  Applying *AGC*, the Third Circuit has instructed courts to evaluate

these factors:

> (1) the causal connection between the antitrust violation and the harm to the
> plaintiff and the intent by the defendant to cause that harm, with neither factor alone
> conferring standing; (2) whether the plaintiff's alleged injury is of the type for
> which the antitrust laws were intended to provide redress; (3) the directness of the
> injury, which addresses the concerns that liberal application of standing principles
> might produce speculative claims; (4) the existence of more direct victims of the
> alleged antitrust violations; and (5) the potential for duplicative recovery or
> complex apportionment of damages.

*Barton & Pittinos*, 118 F.3d at 181.  *AGC* "has been regularly and consistently applied as the

passageway through which antitrust plaintiffs must advance," *2660 Woodley Rd. Joint Venture,*

369 F.3d at 741, and it applies to both federal and state antitrust claims seeking damages.  *See,*

*e.g.*, *Supreme Auto Transp. LLC v. Mittal*, No. 08-cv-5468, 2017 U.S. Dist. LEXIS 30762, at *9–

11 (N.D. Ill. Mar. 3, 2017) (applying *AGC* test to Arizona, California, District of Columbia,

Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New

York, North Carolina, North Dakota, South Dakota, Tennessee, Utah, Vermont, West Virginia,

and Wisconsin antitrust claims); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-

cv-3690, 2015 U.S. Dist. LEXIS 84152, at *24–50 (N.D. Ill. Aug. 23, 2013) (dismissing

California, Kansas, Michigan, Minnesota, New York, and North Carolina state antitrust claims

lacking antitrust standing); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042,

2013 WL 1431756, at *10 (E.D. Mich. Apr. 9, 2013) (concluding that *AGC* test applies to the

state laws in Arizona, California, District of Columbia, Kansas, Maine, Michigan, Nebraska,

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

New Hampshire, New Mexico, New York, West Virginia, and Wisconsin); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094–95 (N.D. Cal. 2007) (applying *AGC* to Kansas, Maine, Michigan, North Carolina, North Dakota, South Dakota, and Wisconsin).[8]   Even in states that have repealed *Illinois Brick*'s ban on indirect purchaser actions, indirect plaintiffs must demonstrate antitrust standing under *AGC*.  *See In re Refrigerant Compressors*, 2013 WL 1431756 at *8–9 (finding that antitrust standing is distinct from indirect purchaser standing and that "application of the *AGC* factors is a proper means of determining antitrust standing"); *DRAM*, 516 F. Supp. 2d at 1087; *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-CV-3690, 2015 WL 3988488, at *5–7 (N.D. Ill. June 29, 2015).

Plaintiffs fail to satisfy the *AGC* factors.  First, Plaintiffs, as retail pharmacies, acknowledge that they are far removed from the manufacturer's direct pricing decisions because they acquire generic drugs "almost exclusively" from drug wholesalers (not drug manufacturers) who can and do mark up the manufacturer's price.  *See* Compl. ¶ 19.  Further, Plaintiffs admit that most of their own sales are mediated by reimbursement agreements between pharmacy benefit managers (PBMs) and the health plans those PBMs serve (who have brought claims here as EPPs), and the pharmacies who dispense drugs to the health plans' insured customers.  *See id.* ¶ 61.  Finally, Plaintiffs have not alleged that they were unable to pass through the overcharges they allegedly paid to their own customers.

The connection between the injuries for which Plaintiffs purportedly seek redress and the manufacturers' actions they contend violated the law is neither direct nor straightforward.  As

---

[8] Four of the 26 states and territories under whose laws Plaintiffs assert antitrust claims have expressly adopted the *AGC* factors in determining whether plaintiffs have antitrust standing.  *See* App'x C (Arizona, District of Columbia, Iowa, Nebraska).  The *AGC* factors have been applied by courts in an additional 11 states. *Id.* (California, Illinois, Maine, Michigan, Minnesota, New York, North Carolina, North Dakota, Tennessee, Vermont, Wisconsin). Of the remaining jurisdictions, an additional 11 states have directed courts to interpret state antitrust statutes in accordance with interpretations of federal antitrust laws. *Id.* (Alabama, Kansas, Mississippi, Nevada, New Hampshire, New Mexico, Oregon, Rhode Island, South Dakota, Utah, West Virginia).

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

middlemen with the opportunity to pass through increased prices, "the exact nature of the damages they have suffered is speculative," which weighs against standing under *AGC*. *Loeb Indus., Inc. v. Sumitomo Corp.,* 306 F.3d 469, 485 (7th Cir. 2002) (denying standing to indirect purchaser-resellers). To the extent Plaintiffs did in fact pass through the alleged overcharges,[9] they have failed to establish another *AGC* factor, a "causal connection between the antitrust violation and the harm to the plaintiff." *Barton*, 118 F.3d at 181 (quoting *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165–66) (3d Cir. 1993)). Plaintiffs have failed to adequately allege a causal connection between any alleged overcharge and their own losses.

Second, persons alleging more direct alleged injuries—namely, DPPs—exist and have also asserted antitrust claims against Defendants based on the same conduct. That these other plaintiffs have also sued "diminishes the justification for allowing a more remote party" to enforce the antitrust laws because denial of recovery to the IRPs "is not likely to leave a significant antitrust violation undetected or unremedied." *AGC*, 459 U.S. at 542; *see also Refrigerant Compressors*, 2013 U.S. WL 1431756, at *14–15. Plaintiffs are not in the best position to vindicate the alleged antitrust violations, as their alleged injuries are more remote than those of other parties with a closer connection to the alleged restraint.

Third, as to state law claims, Plaintiffs' dual role as indirect purchasers and resellers increases the economic complexity of apportioning damages. Calculating Plaintiffs' damages would require not only identifying overcharges to wholesalers and tracing those overcharges to Plaintiffs (while taking account of competition at the wholesale level), but also determining the extent to which Plaintiffs passed on those overcharges through the thicket of their reimbursement agreements with PBMs. *See Vista Health Plan v. Cephalon, Inc.*, No. 2:06-cv-1833, 2015 U.S.

---

[9] The EPPs make this allegation. *See* EPPs Compl. ¶ 228 ("Wholesalers and retailers passed on the inflated prices to [EPPs] and members of the Class.").

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Dist. LEXIS 74846 (E.D. Pa. June 10, 2015) (denying class certification to end payors, noting

"the various links in the pharmaceutical supply chain, and that numerous entities could

contribute all or part of the cost of any particular prescription . . . [make it] impossible to

determine whether an end payor belonged within the class without considering 'the individual

contractual relationships underlying each transaction'") (quoting *In re Skelaxin (Metaxalone)*

*Antitrust Litigation*, 299 F.R.D. 555, 567 (E.D. Tenn. 2014)).   Furthermore, Plaintiffs' state

antitrust claims should not be allowed to proceed because they risk resulting in duplication of

damages.[10]  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745–46 (1977) (noting that "direct

purchasers are not only spared the burden of litigating the intricacies of pass-on but also are

permitted to recover the full amount of the overcharge"); *Loeb Indus.*, 306 F.3d at 486 (citing

*AGC*, 459 U.S. at 544) (courts cannot "ignore the Supreme Court's command to prevent the

duplicate recovery of antitrust injuries wherever possible").  Because Plaintiffs have not alleged,

and cannot establish, antitrust standing under *AGC*, their claims must be dismissed.

### C.   Plaintiffs' Consumer Fraud and Unjust Enrichment Claims Fail Because Plaintiffs Have Failed to Plead Proximate Causation

Plaintiffs must provide plausible allegations of proximate causation as an element of their

consumer fraud claims.  *See, e.g., Supreme Auto Transp. LLC*, 238 F. Supp. 3d at 1042

(dismissing indirect purchasers' consumer protection and unjust enrichment claims under "each

of the fifty states, excluding Ohio and Indiana, and including the District of Columbia" for lack

of proximate cause because "the presence of many intermediate parties along the supply chain"

meant that "the defendants did not legally cause the harm allegedly suffered" and so the *AGC*

---

[10] Indeed, this concern has prompted numerous states that have passed *Illinois Brick* repealer legislation to enact laws aimed at preventing duplicative recovery.  *See* S.D. Codified Laws § 37-1-33 (South Dakota); *see also* 740 Ill. Comp. Stat. 10/7(2) (Illinois); Minn. Stat. § 325D.57 (Minnesota); N.M. Stat. § 57-1-3(C) (New Mexico); N.Y. Gen. Bus. Law § 340(6) (New York); Or. Rev. Stat. § 646.775(1)(b)(A) (Oregon); Vt. Stat. tit. 9, § 2465(b) (Vermont).

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

factors were not satisfied).[11]   In their state-by-state consumer protection allegations, Plaintiffs either do not plead proximate cause or they provide rote allegations that are no more than legal conclusions and are therefore insufficient as a matter of law.  *See Twombly*, 550 U.S. at 555. Each of their consumer protection claims must be dismissed.

As *AGC* developed out of common law proximate cause principles,[12] the same reasoning applies to preclude Plaintiffs' unjust enrichment claims.  Accordingly, Plaintiffs' unjust enrichment claims must be dismissed as well.  *See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999) ("We can find no justification for permitting plaintiffs to proceed on their unjust enrichment claim once we have determined that the District Court properly dismissed the traditional tort claims because of the remoteness of plaintiffs' injuries from defendants' wrongdoing."); *Southard* v. *Visa U.S.A. Inc.*, 734 N.W.2d 192, 199 (Iowa 2007) (dismissing Iowa unjust enrichment claim because "this common-law theory is subject to the common-law rule that bars recovery for remote injuries").  Plaintiffs' allegations are inadequate to state a claim for unjust enrichment, so those claims must be dismissed.  *See Supreme Auto Transp.*, 2017 U.S. Dist. LEXIS 30762, at *16–18 (dismissing

---

[11] *Accord In re Dairy Farmers of Am.*, 2015 U.S. Dist. LEXIS 84152 (dismissing consumer protection claims under Arkansas, California, Florida, and North Carolina law as too remote); *In re Wellpoint, Inc., Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 908, 927–28 (C.D. Cal. 2012) (holding that dismissal of remote plaintiff's Sherman Act claims lacking antitrust standing required dismissal of California consumer protection claim predicated on same allegations); *Thompson v. Bank of Am.*, No. 7:09-CV-8we9- H, 2011 U.S. Dist. LEXIS 109660, at *37 (E.D.N.C. Feb. 24, 2011) (dismissing North Carolina Unfair and Deceptive Trade Practices Act claim for failure to adequately plead proximate causation); *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1322 (S.D. Fla. 2010) (dismissing indirect purchasers' Florida Deceptive and Unfair Trade Practices Act claim for failure to adequately plead proximate causation); *New York v. Daicel Chem. Indus., Ltd*., No. 0403878, 2005 N.Y. Misc. LEXIS 8435, at *23–28 (N.Y. Sup. Ct. Aug. 9, 2005) (dismissing remote consumers' claim under § 349 based on *AGC* factors); *Regence Blueshield v. Philip Morris, Inc*., 40 F. Supp. 2d 1179, 1181, 1185 (W.D. Wash. 1999) (dismissing remote plaintiffs' Montana consumer protection claim lacking proximate causation).

[12] *See AGC*, 459 U.S. at 532–33; *In re Dairy Farmers of Am.,* 2013 U.S. Dist. LEXIS 119962, at *42–43.

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

indirect purchasers' consumer protection and unjust enrichment claims lacking proximate cause because *AGC* factors were not satisfied).

## IV.     PLAINTIFFS' STATE LAW ANTITRUST CLAIMS FAIL FOR STATE-SPECIFIC REASONS

In the Second Count, Plaintiffs allege violations of the antitrust laws of 26 states and the District of Columbia.  Many fail as a matter of law for the state-specific reasons set forth below.

### A.     Plaintiffs Fail to Allege a Substantial Effect on Intrastate Commerce, As Required to State an Antitrust Claim in Several States

The antitrust laws of Alabama, Kansas, Maine, Minnesota, Nebraska, New York, North Carolina, South Dakota, and West Virginia apply only to intrastate activity and/or conduct with a substantial effect within the state. *See* App'x D.  But Plaintiffs here broadly allege only a nationwide conspiracy, *see* Compl. ¶¶ 269–72, then tack on conclusory and substantively identical allegations for each state, including generalized assertions that the conspiracy restrained competition, raised prices, and substantially affected commerce in that state.  Plaintiffs have made no particular factual allegations of any anticompetitive conduct taking place within those jurisdictions.  Similarly, there are no allegations other than boilerplate legal conclusions that the alleged anticompetitive conduct "substantially affected" markets in those jurisdictions.  This Court should dismiss Plaintiffs' claims under the antitrust laws of these states. *See In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508, 2015 U.S. Dist. LEXIS 121620, at *74–75 (E.D. Tenn. June 24, 2015) (dismissing antitrust claims under the laws of Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, and Wisconsin because plaintiffs failed to allege a sufficient nexus to intrastate commerce where they alleged scheme affected the "entire [product] market" and "impacted commerce nationwide").

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

## B.     Certain States Bar Indirect Purchaser Class Actions

The Illinois Antitrust Act prohibits indirect purchasers from bringing class actions.  *See*

740 Ill. Comp. Stat. § 10/7(2) ("[N]o person shall be authorized to maintain a class action in any

court of this State for indirect purchasers asserting claims under this Act, with the sole exception

of this State's Attorney General.").  For that reason, courts in this district have dismissed class

actions asserted by indirect purchasers under Illinois' antitrust statute.  *See In re Wellbutrin XL*

*Antitrust Litig.*, 756 F. Supp. 2d 670, 676–77 (E.D. Pa. 2010) (denying indirect purchaser

plaintiffs' motion to amend complaint to include claims under the Illinois Antitrust Act); *see also*

*In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 539 (E.D. Pa. 2010) (same).  Plaintiffs'

claims under Illinois law must therefore be dismissed.

Rhode Island explicitly repealed the *Illinois Brick* bar on indirect purchaser actions under

its antitrust statute on July 15, 2013.  District courts have concluded that the repeal applies to

claims accruing on or after that date.  *See In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224,

253 (D. Conn. 2015) ("In the absence of evidence of the Rhode Island legislature's intent to the

contrary, I conclude that the law applies only prospectively."); *Cast Iron*, 2015 U.S. Dist. LEXIS

121620, at *63 (dismissing plaintiffs' claims brought pursuant to Rhode Island's Antitrust Act,

to the extent "claims alleg[ed] overcharges before July 15, 2013").  Since Plaintiffs here allege

overcharges beginning in November 2012, they cannot pursue redress for the portion of their

claims concerning overcharges prior to July 15, 2013, under Rhode Island's antitrust statute.

## C.     No Plaintiff Is a Citizen of Utah

Courts in this district and others have consistently dismissed indirect purchaser claims

brought under the Utah Antitrust Act where no named plaintiff was a Utah citizen or resident.

*See Niaspan*, 42 F. Supp. 3d at 759–60 (holding that "at least one named plaintiff must be a

citizen or resident of Utah in order to seek class-wide relief under the Utah Antitrust Act"); *In re*

*Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 251–52 (D. Conn. 2015) (indirect purchasers

lacked standing where, despite allegations they purchased products "in all fifty states," no named

plaintiff was a Utah citizen or resident); *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704,

725 (N.D. Ill. 2015) (dismissing claims under the Utah Antitrust Act where the complaint fails to

claim that the named plaintiffs are Utah residents); *In re Nexium (Esomeprazole) Antitrust Litig.*,

968 F. Supp. 2d 367, 410 (D. Mass. 2013) (same).  Because no named Plaintiffs is alleged to be a

citizen or resident of Utah, Plaintiffs lack standing to bring claims under the Utah Antitrust Act.

### D.   Plaintiffs Failed to Give Notice to the State Attorney General as Required by Arizona, Nevada, and Utah's Antitrust Statutes

Plaintiffs' antitrust claims under the laws of Arizona, Nevada, and Utah must be

dismissed because Plaintiffs fail to allege that they served a copy of the Complaint on the

Attorneys General of those states as required by their antitrust statutes.  *See* Ariz. Rev. Stat. § 44-

1415(A) ("A person filing a complaint . . . for any violation of the provisions of this article shall

simultaneously with the filing of the pleading . . . serve a copy of the complaint . . . on the

attorney general.  Proof of service . . . shall be filed with the court."); Nev. Rev. Stat. Ann.

§ 598A.210(3) ("Any person commencing an action for any violation of the provisions of this

chapter shall, simultaneously with the filing of the complaint with the court, mail a copy of the

complaint to the Attorney General."); Utah Code §76-10-3109(9) ("The attorney general shall be

notified by the plaintiff about the filing of any class action involving antitrust violations that

includes plaintiffs from this state. The attorney general shall receive a copy of each filing from

each plaintiff."); *see also In re Asacol Antitrust Litig.*, No. 15-cv-12730-DJC, 2016 U.S. Dist.

LEXIS 94605, at *45–48 (D. Mass. July 20, 2016) (dismissing claims under Arizona and Hawaii

law for failing to provide notice).

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

## V.     CONSUMER PROTECTION CLAIMS FAIL AS A MATTER OF LAW

In the Third Count, Plaintiffs repackage their antitrust claims as consumer protection claims under the laws of the U.S. Virgin Islands and 21 states—Alaska, Arkansas, California, Colorado, Delaware, Florida, Georgia, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, South Carolina, South Dakota, West Virginia, and Wisconsin.  *See* Compl. ¶¶ 316–38.  Plaintiffs' consumer protection claims fail, however, because Plaintiffs "have not truly *pleaded* claims under [the various state consumer protection laws] sufficient to show their entitlement to recover under them, as required by Rule 8.  Rather, they have pleaded federal antitrust claims . . . and they merely allege that those claims are also actionable under general consumer protection laws . . . ."  *Aggrenox*, 94 F. Supp. 3d at 255 (dismissing claims) (internal citations omitted).

As the Supreme Court clarified in *Iqbal*, "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do."  556 U.S. at 678 (quotations omitted).  Yet a "formulaic recitation" is all that Plaintiffs provide here.  For example, for several states, Plaintiffs recite that Defendants did not disclose their anticompetitive activities or inflated prices and assert that "Defendants misrepresented to all purchasers . . . that Defendants' generic Doxycycline prices were competitive and fair."  Compl. ¶¶ 321 (Delaware), 323 (Georgia), 324 (Michigan), 327 (Nevada), 329 (New Jersey), 333 (North Dakota), 335 (South Dakota), 336 (West Virginia), 338 (U.S. Virgin Islands).  While Plaintiffs' conclusory allegations vary somewhat from state to state, their consumer protection claims merely repackage—and are explicitly predicated on—their underlying conspiracy allegations.

If such allegations were sufficient to state a consumer protection law claim, there would be no need for separate antitrust laws.  *See In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516, 2016 U.S. Dist. LEXIS 104647, at *31–37 (D. Conn. Aug. 9, 2016).  Regardless, because the

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

underlying antitrust claims fail, the Court should dismiss Plaintiffs' consumer protection claims. *See e.g.*, *Formula One Licensing, B.V. v. Purple Interactive Ltd.*, 2001 U.S. Dist. LEXIS 2968, at *13 (N.D. Cal. Feb. 6, 2001).  In addition, Plaintiffs' consumer protection claims fail for the independent reasons described below.

### A.     Plaintiffs Cannot Use Consumer Protection Laws to Recover for Antitrust Claims Barred Under States' Substantive Antitrust Laws

Courts routinely reject efforts to circumvent the *Illinois Brick* bar against indirect purchaser damages claims by recasting them as claims under state consumer protection laws.

**Alaska**.  Alaska amended its antitrust statute in 2003 to specify that "only the Alaska Attorney General may seek monetary relief on behalf of indirect purchasers."  *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1163 (N.D. Cal. 2015) (citing Alaska Stat. Ann. § 45.50.577(i) ("Only the attorney general, in a suit brought under this section, may seek monetary relief for injury indirectly sustained for a violation.")).  Plaintiffs may not "circumvent the *Illinois Brick* bar by reliance on the more general Alaska Consumer Protection Statute."  *Id; see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1108 (N.D. Cal. 2007).

**Florida.**  Because Florida has not passed an *Illinois Brick* repealer law, courts have held that antitrust claims by indirect purchasers are not permitted under Florida's antitrust statutes. *See Mack v. Bristol-Myers Squibb Co.,* 673 So. 2d 100, 102 (Fla. Dist. Ct. App. 1996).  Plaintiffs evidently know this since they asserted no Florida antitrust claim in their Second Claim for Relief.  *See* Compl. ¶¶ 285–314.  Plaintiffs cannot circumvent this limitation by dressing up their (federal) antitrust claim as a consumer protection claim.  *See In re Dairy Farmers of Am.*, 2015 U.S. Dist. LEXIS 84152, at *59–61 (dismissing indirect purchaser claims under the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA") as either barred by *Illinois Brick* or for remoteness).

**New Jersey.**  New Jersey's Antitrust Act does not authorize indirect purchaser suits.  *See In re New Motor Vehicles Canadian Export Antitrust Litig*., 350 F. Supp. 2d 160, 195 (D. Me. 2004).  Plaintiffs cannot avoid this prohibition by categorizing their claim as a consumer protection claim.  *See id.* (dismissing indirect purchaser New Jersey Consumer Fraud Act ("NJCFA") claim because "New Jersey's Antitrust Act permits only direct purchasers to recover, and [ ] allowing recovery for antitrust violations under the NJCFA would violate the Antitrust Act's restriction on indirect purchaser suits").  The NJFCA claim must be dismissed.

**South Carolina.**  Similarly, Plaintiffs should not be permitted to use South Carolina's Unfair Trade Practices Act as an end-run around *Illinois Brick*.  *See Aggrenox*, 2016 U.S. Dist. LEXIS 104647, at *36–37 (holding that "Illinois Brick is decisive" in preventing indirect purchasers from bringing antitrust claims under the South Carolina Unfair Trade Practices Act).

## B. South Carolina's and Georgia's Consumer Protection Statutes Bar Class Actions

South Carolina's statute provides that a person damaged by violation of the South Carolina Unfair Trade Practices Act ("SCUPTA") "may bring an action individually, *but not in a representative capacity*." S.C. Code Ann. § 39-5-140(a); *see also, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) ("[C]lass actions are not permissible under SCUTPA.") (citations omitted).  Georgia also prohibits class action treatment of claims under its consumer protection statute.  *See In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014).  Plaintiffs' class action claims under these statutes must be dismissed.  *See id.* at 1163–65 (holding that plaintiffs cannot maintain class action claims under consumer protection statutes of Georgia and South Carolina).

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

### C.   Consumer Protection Statutes in Arkansas, Georgia, New Mexico, and West Virginia Are Inapplicable to Antitrust Conduct

Plaintiffs' consumer protection claims under the laws of Arkansas, Georgia, New Mexico, and West Virginia must be dismissed because those laws do not encompass actions based on allegations of an antitrust conspiracy.

**Arkansas.**   The Arkansas Deceptive Trade Practices Act ("ADTPA") has been held inapplicable to price-fixing claims. *In re Static Random Access Memory Antitrust Litig. (SRAM) Antitrust Litigation*, No. 07–md–0819 CW, 2010 WL 5094289, at *8 (N.D. Cal. Dec. 8, 2010) ("The Court has found no Arkansas case law indicating that the ADTPA reaches price-fixing conduct of the nature presented in this lawsuit. The Court declines to extend the statute to permit indirect purchasers to sue manufacturers for a conspiracy to fix prices); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029–30 (N.D. Cal. 2007); *see also In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1101 (N.D. Cal. 2007) (dismissing claim under ADTPA where only allegations were of price fixing).

**Georgia.**   Plaintiffs' claims under Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA") must be dismissed because "there is no indication that the Georgia General Assembly intended for this section to be an additional method for antitrust enforcement . . . [r]ather, the goal of the statute is the protection of consumers from overreaching and fraud on the part of sellers." *HLD Enters., Inc. v. Michelin N. Am., Inc.*, No. 1:03-CV-2558, 2004 WL 2095739, at *4 (N.D. Ga. June 29, 2004) (dismissing plaintiffs' GUDTPA claims). Further, GUDTPA "authorizes only equitable relief." *See* Ga. Code § 10-1-373(a).

**New Mexico.**   The New Mexico Unfair Practice Act has also been held to be inapplicable to antitrust-related claims. *See GPU I*, 527 F. Supp. 2d at 1029–30 (price-fixing is not the kind of conduct prohibited by New Mexico consumer fraud statute); N.M. Stat. Ann. § 57-12-2(D).

**West Virginia.** The West Virginia Consumer Credit Protection Act specifically enumerates the practices and conduct that constitute unfair competition or deceptive and unfair practices, and "nothing on the list targets what might be called traditional antitrust conduct—e.g., price-fixing and market allocation . . . [and] it is [ ] clear that the statute is aimed at conduct different from the allegations of price-fixing." *DRAM*, 516 F. Supp. 2d 1072 at 1119.

### D.    Plaintiffs Fail to Allege Deceptive Conduct as Required by New York Law

Section 349 of New York's General Business Law requires "deceptive conduct" and "does not cover price-fixing or other antitrust violation" absent deception. *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 U.S. Dist. LEXIS 32652, at *16 (N.D. Ill. Apr. 1, 2010) (dismissing claim where plaintiffs "have not alleged that [they] ever saw or heard [defendants'] allegedly deceptive statements" and because they were allegedly "injured by the conspiracy to fix prices, . . . that injury occurred regardless of any allegedly deceptive statements").[13]

Assuming *arguendo* Plaintiffs had alleged deception here (and they have not), federal and state courts have routinely dismissed price-fixing claims brought under the New York statute where plaintiffs alleged deceptive acts *not targeted at consumers*. *See In re Automotive Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 552–54 (E.D. Pa. 2007) ("New York

---

[13] *Accord Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 205–06 (2004); *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 752–53 (D.N.J. 2016) (finding that indirect purchasers failed to state a New York consumer protection claim because the plaintiffs merely alleged anticompetitive conduct and not deceptive conduct); *In re Digital Music*, 812 F. Supp. 2d at 408–10 (dismissing indirect purchasers New York consumer protection claims because "anticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute" and "failure to disclose participation in a purported antitrust conspiracy" is an insufficient allegation of deception); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666–67 (E.D. Mich. 2011) (dismissing New York consumer protection claims because indirect purchaser plaintiffs failed "to plead with specificity the allegedly deceptive acts or practices that form the basis of [the] claim" and noting that the statutory language "indicates that anticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute") (citations omitted); *Auto. Refinishing Paint*, 515 F. Supp. 2d at 555 (finding that "mere anticompetitive conduct alone does not constitute deceptive conduct under § 349 and that to come within the scope of the statute, the [c]omplaint must allege some additional deception or misrepresentation").

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

courts . . . have consistently held that when the conduct at issue is between two companies and does not involve the ultimate consumer, it cannot be the basis of a claim under § 349."); *see State v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 303 (N.Y. App. Div. 2007); *see also Paltre v. Gen. Motors Corp.*, 26 A.D.3d 481, 483 (N.Y. App. Div. 2006).  Here, Plaintiffs allege no misrepresentations or deception targeted at consumers.  Compl. ¶ 267.  Their claims under the New York statute must be dismissed.

        **E.**        **Plaintiffs Fail to Allege Unconscionable or Deceptive Conduct**

Many state consumer protection laws require plaintiffs to allege the existence of "deceptive" or "unconscionable" conduct.  *See* App'x E (detailing requirements as applied in Colorado, Delaware, Michigan, Minnesota, New Mexico, North Dakota, South Dakota, and Wisconsin).  Numerous courts have held that, in the absence of such allegations, these states' consumer protection laws do not provide redress with respect to conduct, like price-fixing, which simply amounts to antitrust violations.  *See, e.g., In re GPU I*, 527 F. Supp. 2d at 1029 (New Mexico consumer protection statutes "prohibit[] deceptive and unconscionable conduct in consumer transactions"); *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 555 (E.D. Pa. 2007) ("[M]ere anticompetitive conduct alone does not constitute deceptive conduct under [New York's consumer protection statute . . . .  [T]o come within the scope of the statute, the Complaint must allege some additional misrepresentation or deception.").

Plaintiffs' "consumer protection" claims merely re-hash their Sherman Act claims and are based on precisely the same factual allegations.  This type of "repackaging" approach has been rejected by other courts, and should be rejected here as well.  *See, e.g., In re Dairy Farmers*, 2015 U.S. Dist. LEXIS 84152, at *59–62 (dismissing Florida and North Carolina consumer protection claims that were merely "repackag[ed]" versions of their "insufficiently pled price-fixing claims").

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Moreover, Plaintiffs' attempt to plead misrepresentations, *see*, *e.g.*, Compl. ¶ 321 ("Defendants misrepresented to all purchasers during the Class Period that Defendants' generic Doxycycline prices were competitive and fair."), is unavailing for at least two reasons.  First, insofar as these allegations purport to support a fraud claim, they must meet the heightened pleading standard of Rule 9(b), *see In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *21 (dismissing claims under Florida consumer protection statute for "failure to plead . . . with the requisite particularity"), a bar the Complaint does not even come close to clearing.[14]  Second, alleging a defendant's "failure to inform consumers of the [purported] conspiracy" does not constitute deception or misrepresentation within the meaning of consumer protection statutes particularly where, as here, the allegedly inflated price itself was not hidden from consumers.  *See New Motor Vehicles*, 350 F. Supp. 2d at 176.

Plaintiffs allege no facts supporting a plausible inference that any deceptive or unconscionable conduct occurred in any of these states.  Because no individual Plaintiff alleges any commercial activity with any Defendant, and Plaintiffs make only implausible and conclusory allegations that Defendants made any deceptive representations or exercised power or position over Plaintiffs, this Court must dismiss the statutory consumer fraud claims under the law of each of these states.

---

[14] *See also WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 U.S. Dist. LEXIS 61428, at *7–8 (M.D. Fla. Aug. 4, 2008) (to state a claim under FDUTPA, a plaintiff must plead with the particularity required by Federal Rule of Civil Procedure 9(b) conduct that is unconscionable, unfair, or deceptive); *Sunoptic Techs., LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-979-J-16JRK, 2009 U.S. Dist. LEXIS 23836, at *5 (M.D. Fla. Mar. 17, 2009) ("Like fraud, a claim pursuant to the FDUTPA . . . must . . . meet the heightened pleading standard under Rule 9(b)."); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 947 (N.D. Ill. 2009) (holding that under Rule 9(b), a plaintiff must plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff" and that "[i]n a case involving multiple defendants, the complaint should inform each defendant of the nature of their alleged participation in the fraud" (citation omitted)), *vacated and remanded on other grounds sub nom. Minn-Chem, Inc. v. Agrium Inc.*, 657 F.3d 650 (7th Cir. 2011); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 665 (E.D. Mich. 2011).

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

### F.      North Carolina and Wisconsin Law Require Reliance on a Misrepresentation

To succeed on their consumer protection claims under North Carolina and Wisconsin

law, Plaintiffs must allege that Defendants made misrepresentations that were material to

Plaintiffs' Doxy RR or Doxy DR purchases and Plaintiffs actually relied on those

misrepresentations.  *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 227 (N.C. 2013)

(Plaintiff asserting claim under North Carolina statute must show actual reliance on the allegedly

misrepresented statement); *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 663

(W.D. Wis. 2009) (under Wisconsin statute, the relevant question "is whether [defendant's]

representation materially *induced the plaintiff's decision to act* and whether the plaintiff would

have acted in the absence of the representation") (emphasis in original).  Plaintiffs do not so

allege, so their claims must be dismissed.

While Plaintiffs do allege in a conclusory fashion that Defendants made public statements

that "created the illusion of competitive pricing," Compl. ¶ 332, the *facts* they allege show that

the opposite is true.  For example, the Complaint states that demand for Doxycycline products is

highly inelastic and that the drugs lacked substitutes.  *Id*. ¶ 213(4).  By Plaintiffs' own

admission, the price of the Doxycyline products at issue was not material to their decisions to

purchase the drugs, and they did not rely on Defendants' representations when buying the drugs.

*See, e.g.*, *Jones v. ConAgra Foods, Inc.*, No. C 12-01633, 2014 U.S. Dist. LEXIS 81292, at *65–

66 (N.D. Cal. June 13, 2014) (finding plaintiffs failed to show materiality because they would

have purchased products despite defendant's representations).

### G.      Plaintiffs Fail to Sufficiently Allege In-State Injury

Some states' laws require consumer protection claims to arise from purely or primarily

intrastate conduct—the same rule that applies in some states for antitrust claims.  But Plaintiffs'

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Complaint expressly pleads that the conduct had a substantial effect on *interstate* commerce.  *See* Compl. ¶ 22.  This Court should dismiss the following state law consumer protection claims:

**Delaware.**  The Delaware Consumer Fraud Act states that its purpose is "to protect consumers . . . from unfair or deceptive merchandising practices in the conduct of any trade or commerce *in part or wholly within this State*."  Del. Code Ann. Tit. 6, § 2512 (emphasis added).  Here, because there is no allegation that any such conduct occurred in Delaware, Plaintiffs' claim must be dismissed.  *See Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988) ("Relief, therefore, can be granted under the [DCFA] only as to those unlawful practices occurring or performed partly or wholly within Delaware."); *New Motor Vehicles*, 350 F. Supp. 2d at 182 n.33 ("[T]he offending conduct itself (not merely the trade or commerce) must occur in Delaware.").

**New Hampshire.**  Courts have "acknowledged that the [New Hampshire consumer protection act] requires the proscribed conduct to occur within the state; merely selling a good in New Hampshire is not enough when the proscribed conduct occurs elsewhere."  *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2014 WL 4955377, at *22 (N.D. Cal. Oct. 2, 2014) (citing cases).  The Complaint does not allege that any deceptive conduct (be it entering into the alleged price fixing agreement or "failing to disclose" its existence) actually occurred in New Hampshire.

**New York.**  New York's consumer protection statute only applies if "the transaction in which the consumer is deceived [ ] occur[s] in New York."  *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 (2002); *see also Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 214 (E.D. Pa. 2009) (dismissing plaintiffs' claim under

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

New York consumer protection statute because plaintiffs' allegations of deception did not take place in New York).  Plaintiffs here allege no conduct that took place in New York.

**North Carolina.**  Courts in the Fourth Circuit construe the North Carolina Unfair Trade Practices Act ("NCUTPA") to address "primarily local concerns."  *Cast Iron*, 2015 U.S. Dist. LEXIS 121620, at *93 (dismissing NCUTPA claim because "North Carolina federal courts have interpreted the NCUTPA as addressing 'primarily local concerns'" and "Plaintiffs have failed to meaningfully address intrastate commerce with respect to these claims") (quoting *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987)).  Plaintiffs do not allege that Defendants engaged in any wrongful conduct in North Carolina.  *See* Compl. ¶ 332 (alleging only the in-state effects of the alleged out-of-state wrongful conduct).  North Carolina's consumer protection law does not encompass conduct that causes merely "incidental in-state injury"; the in-state injury must be substantial.  *See Refrigerant Compressors*, 2013 WL 1431756, at *19.  Further, indirect purchasers who buy allegedly price-fixed products at inflated prices suffer only an incidental—not a substantial—in-state injury.  *See id.*  (dismissing North Carolina claims for failure to allege substantial in-state injury where manufacturers and end-users purchased allegedly price-fixed component parts and finished products).  The Court should dismiss Plaintiffs' North Carolina consumer protection claim.

### H. Plaintiffs' Consumer Fraud Claims Can Only Be Brought as to a Limited Class of Plaintiffs or Purchases for Limited Purposes

**Michigan.**  The Michigan Consumer Protection Act limits its protections to the purchase of products for a consumer's personal use.  *See Zine v. Chrysler Corp.*, 236 Mich. App. 261, 273 (Mich. App. 1999).  Here, Plaintiffs (which are independent pharmacies) purchased for resale, so they cannot bring a claim under Michigan's consumer protection statute.

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

**Nevada.**  The Nevada Deceptive Trade Practices Act ("NDTPA") may not be invoked by Plaintiffs because they are not natural persons.  *See Wellbutrin XL*, 260 F.R.D. at 163–64 ("The defendants argue that the Nevada Deceptive Trade Practices Act grants a cause of action only to elderly or disabled persons. The defendants are correct. The only provision of this Act providing for a private civil action is limited to suits by 'an elderly person or a person with a disability.'"); *Cast Iron*, U.S. Dist. LEXIS 121620, at *88 ("Courts have interpreted [the language of the NDTPA] as permitting only natural persons to bring claims under the NDTPA.  Accordingly, as the Indirect Purchasers are not natural persons, their claim under this statute will be dismissed.") (citations omitted); *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 234 (M.D. Pa. 2010) ("A private civil action may be commenced under the NDTPA only by 'an elderly person or a person with a disability.'").

**North Carolina**.  Courts in North Carolina have regularly limited those who can bring private actions under the state's Unfair Trade Practices Act to aggrieved consumers; businesses may assert claims against other businesses "only when the businesses are competitors (or potential competitors) or are engaged in commercial dealings with each other."  *Food Lion, Inc. v. Capital Cities/ABC., Inc.,* 194 F.3d 505, 519–20 (4th Cir. 1999) (reversing judgment that defendants were liable under the Unfair Trade Practices Act).  According to the Complaint, Plaintiffs are not engaged in commercial dealings with Defendants, but instead purchase Doxy RR or Doxy DR indirectly.  *See* Compl. ¶¶ 24–29.  Plaintiffs do not qualify to bring this claim, which must be dismissed.

**West Virginia.**  The consumer fraud statute in West Virginia limits the class of plaintiffs who may pursue private actions to "consumers," defined as "a natural person to whom a sale or lease is made . . . for a personal, family or agricultural purpose."  W. Va. Code § 46A-6-102(2).

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Because Plaintiffs manifestly are not natural persons, and did not purchase Doxy RR or Doxy DR for personal, family, or agricultural purposes, their West Virginia consumer fraud claims fail as a matter of law. *See DRAM*, 516 F. Supp. 2d at 1119 n.12 (granting motion to dismiss West Virginia consumer protection claim without leave to amend).

## VI.  PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' unjust enrichment claim also fails as a matter of law for reasons beyond their failure to sufficiently allege an agreement to conspire.

### A.  Plaintiffs Fail to Plead Any Viable Unjust Enrichment Claims

As an initial matter, Plaintiffs' unjust enrichment claims fail as a matter of law for insufficient pleading. Where "unjust enrichment claims fail to account for any consequential differences that may exist among the undifferentiated state-law claims," such claims are "not entitled to deference, because 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *In re Opana ER Antitrust Litig.,* 162 F. Supp. 3d at 726 (quoting *Iqbal,* 556 U.S. at 678) (dismissing unjust enrichment claims). These claims should be dismissed this on basis alone.

### B.  Plaintiffs' Unjust Enrichment Claims Fail for State-Specific Reasons

As explained in Defendants' memorandum of law in support of their motion to dismiss the EPP Complaint, even if Plaintiffs' unjust enrichment claims are evaluated against the laws of each state under which they purportedly are asserted, they must nonetheless be dismissed, for the following reasons:

**Illinois Brick.**  Plaintiffs cannot bring unjust enrichment claims under the laws of the 23 jurisdictions that have not repudiated *Illinois Brick's* prohibition against indirect purchaser damages actions. *See* App'x A, F; EPP Mem. p. 33. Plaintiffs' claims under the laws of Alaska, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky,

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Louisiana, Maryland, Massachusetts, Missouri, Montana, New Jersey, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Texas, Virginia, Washington, and Wyoming must be dismissed on this basis.

**Direct Benefit.** Plaintiffs do not allege that they dealt with directly or conferred a direct benefit on any Defendant as required under the laws of Alabama, Arizona, the District of Columbia, Florida, Georgia, Idaho, Iowa, Kansas, Maine, Maryland, Michigan, Missouri, New Jersey, New York, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, and Utah.  *See* App'x G; *see also* EPP Mem. p. 34.

**Independent Cause of Action**.  California, Mississippi, and New Hampshire recognize unjust enrichment only as a remedy, not a standalone cause of action.  Similarly, Plaintiffs' claim under Illinois law stands or falls with its Illinois Antitrust Act claim.  *See* EPP Mem. pp. 34–35.

**Exhaustion of Remedies.**  Plaintiffs have not pled exhaustion of all remedies against the party with whom they are in privity as required by Tennessee law.  *See* EPP Mem. p. 35.

**Adequate Legal Remedy.**  Plaintiffs fail to plead that they lack an adequate legal remedy as required under Arizona, Minnesota, Montana, New Hampshire, New York, South Dakota, Tennessee, and Utah law.  *See* EPP Mem. p. 36.

**Special Duty.**  Plaintiffs fail to plead Defendants owe them a special duty as required under Illinois and South Carolina law.  *See* EPP Mem. pp. 36–37.

**Intrastate Conduct.**  Plaintiffs may not avoid Alabama's in-state requirement for antitrust claims by bringing an unjust enrichment claim.  *See* EPP Mem. p. 37.

## VII.  PLAINTIFFS' STATE LAW CLAIMS ARE TIME-BARRED

Many of Plaintiffs' state law claims are barred as untimely by the applicable statutes of limitations, and Plaintiffs' efforts to plead around those bars are unavailing.  Plaintiffs allege that "Defendants' effective prices inexplicably increased sharply beginning in November 2012."

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Compl. ¶ 77; *see also id.* ¶¶ 81, 84, 89.  These increases were no secret:  they were made known to independent pharmacies through the WAC increases Plaintiffs allege occurred around the same time.  *See id.* ¶ 92.  Given these allegations, Plaintiffs' assertion that discovery of their claims was reasonably delayed is wholly implausible.  Plaintiffs cannot logically allege, on the one hand, that a price fixing conspiracy is the only plausible conclusion to be drawn from a price increase in circumstances involving Defendants' attendance at trade meetings (*id.* ¶¶ 111–53), a market susceptible to collusion (*id.* ¶¶ 212–14), and the absence of an external event affecting supply or demand (*id.* ¶¶ 95–99), while also alleging that it would not be reasonable for Plaintiffs to suspect that the most likely explanation for the price increases they experienced was price coordination and to follow up that suspicion with an investigation.

Ignoring what they subsequently characterize as clear evidence of collusion, Plaintiffs allege that they had no reason to know of or inquire into the possibility of collusion until Defendants and other drug manufacturers disclosed that they were the subjects of government investigations and subpoenas.  This theory would place their "discovery" of the possibility of collusion around February 16, 2016.[15]  *See id.* ¶ 215.  Plaintiffs allege there was no information evidencing antitrust violations available in the public domain prior to these announcements, but they also cite to a press release indicating that the NCPA sent correspondence to Senate and House committees requesting hearings on generic drug price spikes nearly two years earlier, in January 2014.  *See id.* ¶¶ 10 n.5 & 184.

This far-fetched explanation cannot save Plaintiffs' untimely claims.  The statutes of limitations barring claims that use a discovery rule all require a prospective plaintiff to undertake

---

[15] Plaintiffs do not specify when this occurred, but it appears to be the release date of Mylan's 10-K revealing that it had received a subpoena, which was February 16, 2016.  Compl. ¶ 196 & n.67.

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

a reasonable investigation as soon as observable facts suggest that they may have been injured, which Plaintiffs failed to do here.  *See, e.g.*, *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 343–44 (E.D. Pa. Aug. 27, 2004) (citation omitted) ("Under Tennessee law, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered."); *see also* App'x H–J.  Plaintiffs should be held responsible for discovering their claims here as early as November 30, 2012, and no later than February 28, 2013.  *See* Compl. ¶¶ 81–89.

The same reasoning renders Plaintiffs' "alternative" allegations that Defendants fraudulently concealed their illegal conduct equally implausible and insufficient.  *See id.* ¶ 222. Under the applicable states' laws, Plaintiffs must allege that Defendants affirmatively concealed their claims (*see* App'x H–J), but Plaintiffs fail to offer sufficient detailed allegations of specific acts of concealment by Defendants.  Plaintiffs' allegations are insufficient to satisfy Fed. R. Civ. P. 9(b), which applies to this claim.  *See In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2017 U.S. Dist. LEXIS 37804, at *198–99 (S.D. Cal. Mar. 14, 2017) (applying Rule 9(b)'s requirement of pleading with particularity to fraudulent concealment claims under state laws).  Conclusory allegations unsupported by sufficient facts demonstrating an affirmative act of concealment are not enough to stop the clock.  *See* App'x H–J.

Finally, Plaintiffs' conclusory assertion that Defendants' conduct was ongoing cannot revive their claims.  Plaintiffs provide no reason to conclude that Defendants "continue[d] to benefit from the effects of the conspiratorial price increases, Compl. ¶ 239, when Plaintiffs' own charts show ███████████████████████████████████ *id.* ¶¶ 77–78.  They allege no other facts permitting the inference that there were ongoing agreements to set prices.  Their allegations provide no adequate basis for Plaintiffs to assert that they can "recover for damages

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

that they suffered during any applicable limitations period" even though their claims could not be brought based on when the illegal conduct started or was discovered. *Id.* ¶ 239.  The following claims are barred as untimely:

**SOLs of One to Two Years:**  These claims are barred whether they are held to accrue upon injury or reasonable discovery:  Consumer protection claims under Alaska, Montana, Utah, and Virginia law; and unjust enrichment claims under California, Oklahoma, Oregon, Puerto Rico, and Texas law.  *See* App'x I–J.

**SOLs of Three Years Accruing Upon Injury:**  These statutes bar: the Kansas antitrust claim; the New York and Wisconsin consumer protection claims; and the unjust enrichment claims in Delaware, District of Columbia, Kansas, New York, North Carolina, and Virginia.  *See* App'x H–J.

**SOLs of Three Years Accruing Upon Reasonable Discovery:**  These statutes bar: the antitrust claims under Mississippi and Tennessee law; the consumer protection claims under Colorado, District of Columbia, Delaware, New Hampshire, and South Carolina law; and the unjust enrichment claims under Alaska, Arkansas, Colorado, Maryland, [Massachusetts], Mississippi, Montana, New Hampshire, Rhode Island, South Carolina, Tennessee, and Washington law.  *See* App'x H–J.

## CONCLUSION

None of Plaintiffs' claims can survive a motion to dismiss.  The Court should dismiss Plaintiffs' Complaint with prejudice.


Dated: October 6, 2017                                    Respectfully submitted,

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

| | |
|---|---|
| _/s/ John E. Schmidtlein_ | _/s/ Sheron Korpus_ |
| John E. Schmidtlein | Sheron Korpus |
| Sarah F. Teich | Seth A. Moskowitz |
| WILLIAMS & CONNOLLY LLP | David M. Max |
| 725 Twelfth Street, N.W. | KASOWITZ BENSON TORRES LLP |
| Washington, D.C. 20005 | 1633 Broadway |
| Telephone: (202) 434-5000 | New York, New York 10019 |
| Facsimile: (202) 434-5029 | Tel:  (212) 506-1700 |
| jschmidtlein@wc.com | Fax:  (212) 506-1800 |
| steich@wc.com | skorpus@kasowitz.com |
| | smoskowitz@kasowitz.com |
| | dmax@kasowitz.com |
| _Counsel for Par Pharmaceutical, Inc._ | |
| | _Counsel for Actavis Holdco U.S., Inc._ |
| _/s/ Michael E. Martinez_ | _/s/ Chul Pak_ |
| Michael Martinez | Chul Pak |
| Steven Kowal | Jeffrey C. Bank |
| Lauren Norris Donahue | Daniel P. Weick |
| Brian J. Smith | WILSON SONSINI GOODRICH & ROSATI PC |
| K&L GATES LLP | 1301 Avenue of the Americas, 40th Flr. |
| 70 W. Madison St., Suite 3300 | New York, NY 10019 |
| Chicago, IL 60602 | Tel. 212-999-5800 |
| Tel. 312-372-1121 | cpak@wsgr.com |
| Fax. 312-827-8000 | jbank@wsgr.com |
| michael.martinez@klgates.com | dweick@wsgr.com |
| steven.kowal@klgates.com | |
| lauren.donahue@klgates.com | Seth C. Silber |
| brian.j.smith@klgates.com | WILSON SONSINI GOODRICH & ROSATI PC |
| | 1700 K. St., 5th Flr. |
| _Counsel for Defendant Mayne Pharma Inc._ | Washington, D.C. 20006 |
| | ssilber@wsgr.com |
| | |
| | _Counsel for Mylan Inc. and Mylan_ |
| | _Pharmaceuticals, Inc._ |
| _/s/ J. Douglas Baldridge_ | _/s/ D. Jarrett Arp_ |
| J. Douglas Baldridge | D. Jarrett Arp |
| Lisa Jose Fales | Daniel W. Nelson |
| Danielle R. Foley | Melanie L. Katsur |
| Venable LLP | Christopher B. Leach |
| 600 Massachusetts Avenue, NW | GIBSON, DUNN & CRUTCHER LLP |
| Washington, D.C. 20001 | 1050 Connecticut Ave., NW |
| (202) 344-4000 | Washington, D.C. 20036-5306 |
| jbaldridge@venable.com | Tel: (202) 955-8678 |
| ljfales@venable.com | Fax:  (202) 530-9527 |

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

| | |
|---|---|
| drfoley@venable.com<br><br>Thomas J. Welling, Jr.<br>Benjamin P. Argyle<br>Venable LLP<br>1270 Avenue of the Americas, 24th Floor<br>New York, New York 10020<br>(212) 307-5500<br>tjwelling@venable.com<br>bpargyle@venable.com<br><br>*Attorneys for Defendant*<br>*Sun Pharmaceutical Industries, Inc.* | jarp@gibsondunn.com<br>dnelson@gibsondunn.com<br>mkatsur@gibsondunn.com<br>cleach@gibsondunn.com<br><br>Indraneel Sur<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166-0193,<br>Tel:  (212) 351-2474<br>Fax:  (212) 716-0875<br>isur@gibsondunn.com<br><br>*Counsel for Defendant Heritage Pharmaceuticals Inc.* |
| */s/ Jan P. Levine*<br>Jan P. Levine<br>Robin P. Sumner<br>Michael J. Hartman<br>PEPPER HAMILTON LLP<br>3000 Two Logan Square<br>Eighteenth & Arch Streets<br>Philadelphia, PA 19103-2799<br>Tel. (215) 981-4000<br>Fax. (215) 981-4750<br><br><br>Keith J. Harrison<br>Shari Ross Lahlou<br>Astor H.L. Heaven<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue, NW<br>Washington, D.C. 20004-2595<br>Tel. (202) 624-2500<br>Fax. (202) 624-5116<br><br>*Attorneys for Defendant West-Ward*<br>*Pharmaceuticals Corp.* | |

REDACTED PUBLIC VERSION
CONTAINS INFORMATION REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER